IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JUANETTE ROBERTS                                                    PLAINTIFF

v.                                    No. 5:13-cv-305-DPM

CRESTPARK STUTTGART, LLC; STUTTGART
VISION CLINIC; GEORGE M. DUNN, JR., ODPA;
CHERYL CONNALLY; and MISTY COX                         DEFENDANTS

## ORDER

**1. Background.** An alleged remark at an eye doctor's office, and the fallout from it, has given rise to defamation, race discrimination, and retaliation claims. Juanette Roberts was a certified nursing assistant and driver for Crestpark Suttgart, LLC—a nursing home—for approximately thirteen years. In early November 2012, Roberts drove a Crestpark resident to the Stuttgart Vision Clinic for an appointment, waited in the clinic during the appointment, and then took the patient back to the nursing home. What Roberts did or didn't say at the clinic is disputed. It's agreed, however, that the Clinic office manager called the Crestpark administrator and requested that the driver (the Clinic didn't know Roberts by name) be barred from bringing residents to the Clinic in the future. Dr. George Dunn, the optometrist, had told his office manager to make this call. The next day,

Crestpark gave Roberts a written warning and eliminated her driving responsibilities.  Roberts claims that the Clinic, Cheryl Connally (the office manager), and Dr. Dunn defamed her with the telephone call.

A few months later, Roberts and Crestpark parted ways.  Roberts says that she was demoted to a part-time feeder position after the Clinic's call, treated differently than a similarly situated Caucasian employee, retaliated against after filing an EEOC claim, and, eventually, forced to quit.  Roberts makes race-discrimination and retaliation claims against Crestpark.

**2. The Issues.**  Roberts seeks a jury trial on all her claims.  All the defendants seek judgment as a matter of law for one reason or another.  The Court takes the material facts, where genuinely disputed, in Roberts's favor. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

There's a record issue.  Roberts moves to strike the Clinic defendants' response, № 48, to Roberts's statement of disputed facts, № 46.  This motion is denied.  It would be prejudicial to allow the Clinic defendants to file a new statement of facts with their reply.  But, though the matter is not addressed in Local Rule 56.1(a), it's permissible for the Clinic defendants to respond to Roberts's statement of *additional* facts—so the Court can see which facts are

-2-

genuinely disputed and which aren't.

Now to the merits. The dispositive issue on defamation is the Clinic defendants' qualified privilege to speak to another entity with whom it does business. The discrimination claim comes down to pretext. Constructive discharge turns on the evidence about the work situation at Crestpark. And on retaliation, the question is whether Roberts suffered an adverse employment action. None of Roberts's claims, the Court concludes, present a jury question.

**3. Defamation.** Cheryl Connally, the Clinic office manager, reported to Misty Cox, the Crestpark administrator, that two Clinic employees heard the Crestpark driver remark "if you don't have the patience, you shouldn't see older people" as she left the Clinic. № 32-3 at 15–16[*]; № 32-4 at 13, 18. Roberts denies making the remark. She didn't say anything negative about the Clinic while she was there. № 32-1 at 121–25. She remembers discussing President Obama's re-election with another person in the waiting room. And she got displeased looks from some of the Clinic employees. № 32-1 at 124–25; № 44-3 at 1–2. At Crestpark's request, the Clinic later documented the Connally/Cox

---

[*] Deposition pagination here and throughout this Order.

call in a letter, which Crestpark provided to the EEOC.

The Court assumes, taking the record in Roberts's favor, that she's made a *prima facie* case of slander—spoken defamation. The Clinic criticized her attitude on the job, to her detriment, by complaining to Crestpark about something she didn't say. *Dodson v. Allstate Insurance Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001). But as the Clinic defendants argue, Arkansas law privileges the statement in these circumstances.

The Clinic and Crestpark have a business relationship. The Clinic takes care of some Crestpark residents—both businesses have an interest in maintaining that mutually beneficial relationship. With that interest comes a qualified privilege for communications. *Compare Scholtes v. Signal Delivery Service, Inc.*, 548 F. Supp. 487, 496–97 (W.D. Ark. 1982). Two Clinic employees told Connally that they heard Roberts make a remark critical of Dr. Dunn's patience with older folks. Connally checked with her boss and then called the Crestpark administrator. Whether the office workers' report was true or false, Connally and Dr. Dunn acted in good faith. There's no suggestion of malice. Connally acted after gathering facts and getting her boss's permission. They had a reasoned basis for believing that Roberts had made the statement.

*Compare Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 736–37, 74 S.W.3d 634, 654–55 (2002). The Clinic didn't ask for Roberts to be fired or disciplined; it asked that she not bring any more patients to the Clinic. Finally, this was a management-to-management communication; the Clinic did not broadcast Roberts's alleged remark. The only publication beyond the Connally/Cox call was the confirming letter — part of the EEOC investigation. On this record, the conditional privilege holds, and the Clinic defendants are entitled to judgment as a matter of law. *Navorro-Monzo v. Hughes*, 297 Ark. 444, 449–50, 763 S.W.2d 635, 637 (1989); *Addington v. Wal-Mart Stores, Inc.*, 81 Ark. App. 441, 454, 105 S.W.3d 369, 378–79 (2003).

**4. Discrimination.** Roberts's race-discrimination claims under Title VII, the Arkansas Civil Rights Act, and 42 U.S.C. § 1981 are all analyzed under the *McDonnell Douglas* framework. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005). The Court assumes Roberts has made a *prima facie* case. Roberts got a warning and was removed from driving responsibilities after the Clinic complained. № *51-13*. Crestpark gave her the option of continuing her CNA duties without transportation responsibilities (doing what she already did two or three days a week when she wasn't driving) or becoming a feeder. №

*51-13*. She was a CNA on the floor for two days before she transferred to feeder because she was not getting help from younger CNAs with lifting patients. *№ 51-1 at 70*. The change to feeder resulted in less hours and, more importantly, less pay. Roberts argues that the demotion to feeder amounts to discrimination. Crestpark has provided a legitimate non-discriminatory reason for giving Roberts the warning and eliminating her driving duties — the Clinic's report and request. The claim thus comes down to pretext.

Roberts points to a Caucasian co-worker ("S.C.") who didn't lose her driving duties after a complaint. A resident's daughter complained about S.C. *№ 51-19*. Cox investigated, spoke with the resident, spoke with S.C., and concluded that S.C. hadn't been rude. *№ 32-3 at 27–28*. Instead, Cox gave S.C. a verbal warning for what she determined had occurred: discussing overtime in front of a patient. Roberts argues that S.C. was allowed to explain what happened, while Roberts was not. S.C., however, is not a valid comparator because of what came to light after Cox's investigation. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013). Pre-investigation the allegations are of comparable seriousness — causing a disturbance. But post-investigation the

similarities evaporate. The resident refuted his daughter's complaint about S.C.; the Clinic stuck to its complaint about Roberts. The violation that remained against S.C. — discussing overtime in front of a patient and his family member — is not comparable to Roberts's critical remark about a doctor with whom Crestpark had a business relationship. *Ibid.* Roberts should have been given an opportunity to explain her version of events before Crestpark acted. But that alone doesn't mean the circumstances encountered by S.C. and Roberts are substantially similar. S.C. is not similarly situated in every material way. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014). Roberts therefore hasn't provided sufficient evidence that Crestpark's reason for eliminating her driving responsibilities was a pretext for race discrimination.

**5. Constructive Discharge.** Roberts claims that she was constructively discharged. The question is whether Crestpark intentionally made Roberts's working conditions intolerable in order to force her to quit. *Spears v. Missouri Department of Corrections and Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000).

Roberts's conditions weren't objectively intolerable. She didn't lose her

title, position, or hourly pay. *Compare Sanders v. Lee County School District No. 1*, 669 F.3d 888, 893–94 (8th Cir. 2012). Yes, Roberts's driving responsibilities were eliminated, she eventually worked less than full-time as a feeder, and she received two written reprimands. But Roberts moved to a feeder position by choice after only two days. She didn't allow Crestpark enough time to address the lifting-assistance issue. Roberts also acknowledges that one of the reasons she left Crestpark eventually was to get benefits. № 51-1 at 87. The nursing home, moreover, made decisions that accommodated Roberts. Crestpark allowed her to take more than two consecutive weeks off to go see her grandchild. № 51-1 at 85. And Roberts gave a two-weeks notice in January 2013, and then withdrew her request—without any backlash from Crestpark. № 51-1 at 84–85. This record just doesn't support Roberts's constructive-discharge claim. *Spears*, 210 F.3d at 854–55.

**6. Retaliation.** Roberts's retaliation claim fails because she hasn't shown a resulting adverse employment action. *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). She filed her EEOC claim in mid-January 2013. № 51-17. Two weeks later she got a written reprimand for allegedly not feeding a resident. № 44-13. Roberts argues that a fair

investigation wasn't done, especially considering that she was following the directions of her supervisor when she left the resident. The reprimand's timing is suspicious. But this discipline had no real consequences. It didn't, for example, lead eventually to a firing. Without a change in her employment conditions, the reprimand alone is simply not enough to support an inference of discrimination. *Cossette*, 188 F.3d at 972.

* * *

The motions for summary judgment, № 32 & 37, are granted. The motion to strike, № 49, is denied.

So Ordered.

_D.P.Marshall Jr._
D.P. Marshall Jr.
United States District Judge

_30 April 2015_